## LAWSON v. OREAR.

1. A party complaining of error must show sufficient matter in his bill of exceptions to create the presumption of injury, as well as of error, and this is shown whenever the evidence admitted against an exception is *prima facie* irrelevant, or illegal.

2. Reputation is not admissible evidence to prove insolvency, as that is the legal conclusion from facts to be stated ; but reputation of facts or circumstances from which insolvency may be inferred, is proper evidence to go to the jury.

Lawson v. Orear.

Writ of error to the Circuit Court of Talladega.

TRESPASS to try titles. The suit was commenced by John Lawson against Robert Lawson, but Orear was admitted to defend as the landlord of the defendant.

At the trial the plaintiff gave in evidence a regular chain of title from the United States to himself; the last link in this chain was a deed from one James Lawson. There was proof that James, was the brother of the plaintiff, and that Robert Lawson, the original defendant, was his father. Orear offered to prove that, according to general reputation, both Robert and James Lawson were insolvent, when the conveyance was made by him to plaintiff, and that Robert Lawson was so before that time. The plaintiff objected to this evidence, either as to James, or Robert, but the Court admitted it; and thereupon the plaintiff excepted. This is now assigned as error.

S. F. RICE, for the plaintiff in error, cited Carter v. Castleberry, 5 Ala. Rep. 277; 5 Porter, 382; Branch Bank v. Parker, 5 Ala. Rep. 731; Whitman v. Farmers' Bank, 8 Por. 258.

B. F. PORTER, contra, insisted, that there was nothing in the bill of exceptions to show, that injury resulted to the plaintiff from the charge, and, therefore, if erroneous, the judgment ought not to be reversed for the error of the charge. [Johnson v. Ballew, 2 Porter, 29; 3 Ib. 155; 1 Ib. 479.] The inquiry as to the insolvency may have been collateral, and in that aspect the evidence was proper. [Ward v. Thompson, 5 Porter, 384.] The party complaining of the error, must show the relevancy of the evidence. [Clendenning v. Ross, 3 S. & P. 267; 1 Porter, 139; 1 Ala. Rep. 517; Ib. 582.]

GOLDTHWAITE, J.—1. The defendant, insists, that if the admission of general reputation as to the insolvency of the persons named in the bill of exceptions is conceded to be erroneous, yet the judgment ought not to be reversed, because it is not affirmatively shown how this evidence prejudiced the plaintiff. The rule certainly is as stated by the counsel, but the presumption of injury arises whenever irrelevant, or illegal evidence, is forced on a party against his exception. This question has recently been presented to us in a great variety of aspects, but has uniformly received the same answer, to wit: that
99

it is incumbent on the party complaining, to show sufficient matter in his bill of exceptions to create the presumption of injury, as well as of error; and this is shown whenever the evidence admitted against an exception, is *prima facie* irrelevant or illegal. If a state of facts exist, which has the effect to destroy the *prima facie* intendment, it would be proper for the judge allowing the exception, so to explain it; or, if not sufficiently stated by the party, to refuse to allow the bill. In the present case, the objection is taken to the admission of this evidence, and as *prima facie* it is irrelevant, the objection, for this reason, should have been sustained; or, if a sufficient cause was supposed to exist for its admission, in connection with other evidence, or in a different aspect of the case, that should have been shown. As the case is stated, the irrelevancy of the evidence admitted, is a sufficient reason for the reversal of the judgment.

2. But if we should assume that the contest before the jury was such as would render proof of the insolvency of both, or either of the Lawsons admissible, then our opinion would be, that this could not be proved by reputation. Such, indeed, seems to have been the conclusion arrived at, in other cases in this Court. Ward v. Henderson, 5 Porter, 383; Branch Bank v. Parker, 5 Ala. Rep. 731; though the precise question involved here, was not directly presented in either of the cases just cited. It will be seen that the evidence allowed to go to the jury in this case was, that the Lawsons, according to general reputation, were insolvent, at the time, when the land in controversy was conveyed by James Lawson to the plaintiff. Now, it seems to us, that insolvency is rather the conclusion which the law deduces from other facts, than a fact by itself; and therefore it is quite probable that a witness would not be permitted to state this conclusion, independent of the facts from which it was to be inferred; but in most cases, where the question of insolvency is collaterally involved, it is nothing more than the attempt to show that the particular individual is not in a condition to be trusted as a debtor. In all such cases, the common question which suggests itself to every mind is, why is he not to be so trusted? or, what is his condition as to property; or credit, or the want of either? Every one in any considerable degree acquainted with the business community,

knows that the answers to these questions are exceedingly various; and that they as frequently depend on the reputation or character, which the individual has acquired, as upon any certain knowledge. Indeed, from the very nature of things, it is scarcely possible, that there can be any certain means of acquiring exact information upon such a subject. Individuals may present themselves as purchasers, each alike destitute of pecuniary means, and yet some of them may be as trustworthy and even safe debtors, as men of fortune ; while some others would be entirely the reverse. What is the distinction between these classes, and how does it arise, if it is not in the reputation that each has acquired ? So too in the case of men of pecuniary means, or possessed of property, it is highly improbable that one out of the hundred of those, who recognize and act with them as such, have any knowledge of their means or property. Indeed, in all, or in a very large majority of all the trading classes, the information of the seller, as to the ability of the purchaser to pay, is derived from reputation, and most generally from no other source whatever. To shut out from a jury the same evidence upon which the entire community acts, would present a singular result. It is certainly true, there is little to be found in the books upon this subject, but cases very analogous are not rare. Such are those, relating to the proof of marriage and character; the first of which is generally proved by reputation, and the last is capable of no other proof. It is very difficult to draw any distinction between the character of an individual as a correct member of society, and that which attaches to him in relation to his property, or the want of it; his punctuality, his business qualifications, his industry, or even his shrewdness. In the case of The State v. Cochran, 2 Dev. 63, the prisoner was indicted for passing counterfeit bills, and to repel the *scienter* which was inferable from circumstances, he proposed to inquire of a witness, if it was not generally understood and believed, by the neighbors and acquaintances of the prisoner, that he was a moneyed man, and had carried considerable money with him when he removed to Georgia. The inquiry was held to be proper, and the Court seemed to consider it difficult, if not impossible, to establish the same matter by any other kind of proof.

We have before adverted to the manner in which the ques-

tion was raised in the Court below, and stated our conclusion, that as insolvency is a legal conclusion, it cannot be proved by general reputation, but if the evidence had been to show the reputation of facts, or circumstances, from which this conclusion might properly be drawn, we are unable to perceive any sufficient reason to exclude such evidence. Its effect when before the jury, is a matter which we need not now examine, though it is evident, it is entitled to little weight, when opposed by evidence of a more satisfactory character. [Weeks v. Sparks, 1 M. & S. 686.]

The result of our opinion is, the reversal of the judgment, and the remanding of the cause.