## STANLEY & ELLIOTT *vs.* THE STATE.

1. Whether a person is "a man of known intemperate habits," is a question of fact to which a witness may depose.
2. Under an indictment for retailing without a license, (Code, § 1059,) evidence that the intemperate habits of the person to whom the liquor was sold were generally known in the community, is irrelevant and inadmissible : the fact that his intemperate habits were generally known in the community, does not justify the inference that they were known to the defendant.

APPEAL from the Circuit Court of Limestone.

Tried before the Hon. JOHN E. MOORE.

THE indictment in this case, which was found at the September term, 1853, of the Circuit Court, is as follows :

"The grand jurois of said State upon their oaths present, that Henry Stanley and William B. Elliott, late of said county, on the 20th day of July, A. D. 1853, in the county aforesaid, did sell spirituous or vinous liquors to one John G. Russell and others, without first having obtained a license from the Probate Court of said county for that purpose, contrary to law, and against the peace and dignity of the State of Alabama."

On the trial the State introduced said John G. Russell as a witness, who testified, " that, within twelve months prior to the finding of the indictment, he frequently bought whiskey from the defendants, in quantities not less than a quart, which he took home to drink ; that he never bought whiskey from them in quantities less than a quart, and had never bought any to drink on the defendants' premises. The State then introduced one James M. Lane, who testified, that he had been for a long time acquainted with said Russell, and that he (Russell) was a man of known intemperate habits.   To this testimony the defendants objected, on the ground that the witness must state the actual habits of said Russell, and leave it to the jury to determine whether or not they amounted to intemperate habits ; but the court overruled the objection, and admitted the testimony, and the defendants excepted." Several witnesses for the State testified, " that said Russell was generally known in the community to be a man of intemperate habits" ; to which testimony, in each case, the defendants objected, and also excepted to the ruling of the court in admitting it.

The defendants asked the court to charge the jury, " that they should not find defendants guilty, unless they find that said Russell was a man of known intemperate habits, and that his habits were known to them when the whiskey was sold to him ; which charge the court gave, but charged the jury also, that if they found from the evidence that said Russell, at the time he purchased the whiskey from the defendants, was a man of known intemperate habits in the community from the use of liquor, then they might from this evidence infer a knowledge on the part of defendants ; and to this charge the defendants excepted.   The court charged the jury, also, that they must disregard the testimony of Lane and the other wit-

nesses founded upon mere opinion, and could only find the defendants guilty upon facts ; that unless the evidence was that Russell was a man of known intemperate habits from an intemperate use of spirituous liquors, they must find for the defendants."

The rulings of the court in the admission of the evidence objected to, and in the charge given, are now assigned for error, together with other matters not necessary to an understanding of the points here decided.

ROBINSON & JONES, for the appellants, contended,—

1. That it was not permissible to establish the habits of the person to whom the liquor was sold by the kind of evidence adduced in this case ; that the testimony of the witnesses, as to Russell being " a man of known intemperate habits," was but the statement of a legal conclusion ; that they should have stated the facts which go to make up that character, and left the court and jury to draw the legal conclusions to be deduced from those facts.—Parker v. Haggerty, 1 Ala. 632 ; Blevins v. Pope, 7 *ib*. 374 ; Bank at Montgomery v. Parker, 5 *ib*. 736 ; McCurry v. Hooper, 12 *ib*. 827.

2. That the admission of this illegal evidence was not cured by the withdrawal of it from the jury in the charge of the court.—McCurry v. Hooper, 12 Ala. 828.

3. The court should have given the charge asked without qualification, because the proof fails entirely to show that the defendants were so situated that they must have known Russell's common reputation for intemperate habits : unless this was shown in some way, either by near residence, intimate association, or in some other legal mode, the court cannot presume that the defendants knew it.

M. A. BALDWIN, Attorney General, *contra*, cited the case of Elam v. The State, 25th Ala. 53.

GOLDTHWAITE, J.—The first question presented upon the record is, as to the action of the court in refusing to exclude from the jury the statement of one of the witnesses, that Russell, the party to whom the liquor was sold, was a person of known intemperate habits. It is true, that the

general rule forbids the opinions or legal conclusions of witnesses from being given in evidence ; but the question as to intemperate habits is purely one of fact, and it can make no difference in principle, that being the case, that the matter in relation to which the witness is required to speak is made up of more than one fact.   That it is a conclusion, is true ; but it is no more so than that a man is embarrassed with debt, which we have held to be competent evidence.—Massey v. Walker, 10 Ala. 288.   There are legal conclusions which the law alone is authorized to draw, but this is not one of them. It follows, that as the evidence to the fact to which we have referred was proper, and the objection general, the court did not err in overruling it.

We regard, however, the refusal of the court to exclude the evidence that the intemperate habits of Russell were generally known in the community, as erroneous.   The question was simply whether these habits were known to the defendants (Elam v. The State, 25 Ala. 53), and unless the evidence tended to bring home this knowledge to them, it was *prima facie* irrelevant.   We are aware that the proposition that the general knowledge of a fact in a neighborhood, raises an inference as to the knowledge of each individual in the same neighborhood, has, on more than one occasion, received the sanction of this court ; but on a careful examination of the question, we are satisfied that the rule as laid down cannot be sustained. We agree, that where a fact is of such a nature, or is surrounded by such circumstances, as to impress itself upon a neighborhood, or particular community, it will then create a presumption, more or less strong, as to the knowledge of each individual composing the community.   This is nothing more than the 'assertion of the common principle, that whatever affects the whole affects the parts ; and the inference then rests upon the positive character of the fact itself, or the attending circumstances.   But because a fact is generally known, it does not follow that it is universally known ; on the contrary, as that which is within the knowledge of the greater portion of the community, may be properly said to be generally known, the proposition is unsound and illogical, as it makes that which affects a part only, extend to the whole. It has been urged, that the whole theory of circumstantial

evidence is founded on the doctrine of probabilities, and this may be conceded, without admitting the rule as broadly as contended for. It is not enough, however, that there should be a mere probability. A presumption is " an inference as to a fact not actually known, arising from its necessary or usual connection with others which are known."—1 Stark. Ev. 24. Here, the known fact is the knowledge by the community generally ; the inference is, the knowledge of the community universally ; or, in other words, the proposition may be stated thus : It is usual for the whole community to know, whatever the greater part of the community knows. We have carefully examined the English cases, and can find none which sustains the proposition—nothing in the text writers ;—and the entire absence of authority in relation to a rule of such general application, is convincing against its existence.

In this court the doctrine was first advanced in Ward v. Herndon, 5 Port. 382, in which the action was for a deceit, in representing one Simpson to be solvent and worthy of credit, under the influence of which representations the plaintiff sold him goods to a large amount. On the trial, the representations as to the solvency and credit of Simpson were established, and it was also proved that he was generally reputed to be insolvent in the neighborhood in which both the defendant and himself resided. This last evidence was objected to, and on error held to be admissible to bring home knowledge of the reputation to the defendants, on the ground. " that no man is presumed to be so much of a recluse as not to know what is generally known and talked of in his neighborhood." While with deference we dissent from the reasoning, we agree that the decision was correct, on the ground that the defendants occupied a relation to the party whom they recommended, which should have put them on inquiry as to his credit ; and his general reputation where the law presumed he was best known, was a fact affecting his credit.— Lawson v. Orear, 7 Ala. 784. In The Bank v. Parker, 5 Ala. 731, the same doctrine was again asserted, and Ormond, J., dissented ; but it will be found on an examination of that case, that what was there said upon the question we are now discussing was a dictum merely, as the point did not arise upon the record. The subsequent decisions rest entirely upon

the cases we have referred to, treating the question as determined by them, without any examination into their correctness, or any new argument in their support. It is a matter of no small importance, that a rule which goes to the admissibility of evidence in so large a class of cases should be correctly settled; and satisfied that it cannot be sustained as broadly as it has been laid down, we are bound to repudiate it. We would not, however, be understood as holding that the knowledge of a fact by one party will not, in any case, warrant the inference that it was communicated by him to another : we go no further than to deny the general proposition, that the knowledge of an individual as to any and every fact may be inferred from the mere circumstance that it is generally known in his neighborhood.

The views we have expressed apply to the charge of the court, and as it is probable the other questions presented on the record may not arise on another trial, we deem it unnecessary to decide them.

Judgment reversed, and cause remanded.